UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALISHA BOGART, an individual., <br><br>                              Plaintiff, <br>   vs. <br><br> GLENMARK GENERICS, INC., USA, a Delaware corporation; and DOES 1 through 50, inclusive, <br><br>                              Defendants. | CASE NO.14-CV-778 LAB DHB <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

## I.   Introduction

Plaintiff Valisha K. Bogart alleges that she consumed defective birth control pills placed into the stream of commerce by Defendant Glenmark Generics and, as a result, became pregnant. Plaintiff's complaint lists six causes of action: (1) strict products liability; (2) negligence; (3) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et. seq.*; (4) breach of the implied warranty of fitness for a particular purpose; (5) breach of the implied warranty of merchantability; and (6) breach of express warranty. Glenmark moves to dismiss all six causes of action for failure to state a claim.

## II.   Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court

- 1 -

1  must accept all factual allegations as true and construe them in the light most favorable to
2  Bogart. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972,
3  975 (9th Cir. 2007). To defeat Glenmark's motion to dismiss, Bogart's factual allegations
4  needn't be detailed, but they must be sufficient to "raise a right to relief above the speculative
5  level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "some threshold
6  of plausibility must be crossed at the outset" before a case can go forward. *Id.* at 558
7  (internal quotations omitted). A claim has "facial plausibility when the plaintiff pleads factual
8  content that allows the court to draw the reasonable inference that the Defendant is liable
9  for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility
10 standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility
11 that a defendant has acted unlawfully." *Id.*

12 Although the Court must draw all reasonable inferences in a way that is favorable to
13 Bogart, it need not "necessarily assume the truth of legal conclusions merely because they
14 are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d
15 1136, 1139 (9th Cir. 2003) (internal quotations omitted). In fact, the Court does not need to
16 accept any legal conclusions as true. *Iqbal*, 556 U.S. at 678. A complaint does not suffice
17 "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal
18 quotations omitted). Nor does it suffice if it contains a merely formulaic recitation of the
19 elements of a cause of action. *Twombly*, 550 U.S. at 555.

20 **III.   Discussion**

21 The Court will address the claims in the order that Bogart asserts them.

22 **A.    Strict Products Liability**

23 Under California law, strict products liability exposes a broad range of defendants to
24 liability for defective products. Liability attaches if the plaintiff establishes an actual defect
25 in the product and a causal connection between defendant, the product, and plaintiff's injury.
26 *See Romine v. Johnson Controls, Inc.,* 224 Cal. 4th 990, 1000 (2014). A defective product
27 is one that differs from the manufacturer's intended result or from other identical units of the
28 same line of products. *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 429 (1978).

Bogart alleges that Glenmark is strictly liable "for manufacturing, distributing, selling, and/or placing the [b]irth [c]ontrol [p]ills into the stream of commerce." (Compl. ¶ 24.) Glenmark argues that her complaint fails to state a claim for strict products liability because it alleges the existence of a manufacturing defect by inference, asserting merely that Bogart was injured while using this product. To the contrary, the complaint contains greater factual details than Glenmark acknowledges. It specifies that the pills were packaged such that select blisters inside the pill box were rotated one hundred and eighty degrees within the card, thereby reversing the weekly tablet orientation. It alleges that these defects caused Bogart to take the pills out of order, making them ineffective for contraception and causing her harm in the form of an unintended and unwanted pregnancy. It further states that the birth control pills were defective when they left Glenmark's possession. (Compl. ¶ 14, 22.)

To survive a motion to dismiss, plaintiff's factual allegations must raise a right to relief above the speculative level. *See Twombly,* 550 U.S. at 555. The Court concludes that given the allegations, it is plausible that Glenmark may be strictly liable for a manufacturing defect. The motion to dismiss the strict products liability claim is **DENIED.**

**B.    Negligence**

The elements of a products liability claim based on negligence under California law are that (1) defendant designed, manufactured, or supplied the product; (2) defendant fell below the standard of reasonable care in designing, manufacturing, or supplying the product; (3) plaintiff was harmed; and (4) defendant's negligence was a substantial factor in causing plaintiff's harm. *See Judicial Council of California Civil Jury Instructions No. 1220 (2014).*

Glenmark argues that Bogart's negligence claim is wholly dependent on her assumption that the product contained a manufacturing defect, and further moves for dismissal on the grounds that she improperly bases her negligence claim on a failure to warn theory. (Docket no. 7-1 at 8-9.) The Court does not agree.

Bogart's complaint relies on more than just a failure to warn theory. Her complaint also alleges that her injury was caused by Glenmark's negligence in placing the birth control pills into the stream of commerce without inspecting for defects, eliminating defects, or using

reasonable care in designing, manufacturing, packaging, and distributing the pills. (Compl. ¶ 10, 28.) She also alleges that Glenmark did not warn consumers that the product may have left Glenmark's possession unsuitable for use and that the harm was foreseeable. (Compl. ¶ 28, 29).

Accepting all of the factual allegations in the complaint as true, It is plausible that a pill manufacturer who does not inspect its products may foreseeably cause the sort of harm Plaintiff alleges she suffered. This is particularly true where the underlying defect alleged - packaging pills in a rotated manner so they would be taken out of order - could be caught by a simple visual inspection, as Plaintiff alleges. (Compl. ¶ 29-30). It would be premature to dismiss this claim prior to adjudication on the merits. The motion to dismiss Bogart's negligence claim is **DENIED.**

### C. Violation of the CLRA, Cal. Civ. Code §§ 1750 et. seq

The CLRA was enacted to protect consumers against unfair and deceptive business practices. *See* Cal Civ. Code § 1760. It generally prohibits manufacturers from representing that goods or services have characteristics or benefits that they do not have, representing that goods are of a particular standard if they are not, advertising goods or services with intent not to sell them as advertised, and other deceptive practices. *See* Cal Civ. Code § 1770.

#### *(i) Application of the CLRA to Prescription Drugs*

Glenmark claims that the CLRA does not apply to prescription pharmaceutical products. Glenmark argues that the body of CLRA decisions demonstrates that the statute is directed at everyday consumer items purchased from vendors and merchants who sell goods and services to consumers as a whole, whereas prescription pharmaceutical products are only sold to a subset of the population.

According to Cal. Civ. Code § 1770(a), the CLRA broadly applies to any transaction intended to result or resulting in the sale or lease of goods or services to a consumer. Additionally, The CLRA must be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices."

*See Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 869 (2002) (citing Cal. Civ. Code § 1760). The CLRA defines "goods" as tangible chattels bought or leased for use primarily for personal, family, or household purposes. *See Fairbanks v. Superior Court*, 46 Cal. 4th 56, 61 (2009); *see* Cal. Civ. Code § 1761.

Bogart argues that two California authorities apply the CLRA to pharmaceutical products: *In re Vioxx Cases,* 180 Cal. App. 4th 116 (2009) and *Steroid Hormone Product Cases*, 181 Cal. App. 4th 145 (2010). Glenmark points out that both of those cases largely focused on class certification issues and did not explicitly examine CLRA's application to pharmaceutical products. Although these cases were class actions, both opinions included entire sections reviewing the CLRA, including the practices deemed unlawful under the statute and requirements for recovery. *See In re Vioxx Cases,* 180 Cal. App. 4th at 128-129; *In re Steroid Hormone Product Cases,* 181 Cal. App. 4th at 155. And, while neither court discussed whether the CLRA covered pharmaceutical products, both explicitly applied the CLRA to pharmaceutical products, strongly implying that the courts found the statute applicable.

The Court agrees that the CLRA is applicable to pharmaceutical products. The CLRA was created to protect consumers from unfair and deceptive business practices. In liberally construing the CLRA, as California case law requires, the Court finds that birth control pills are tangible chattels bought primarily for personal use. As such, birth control pills are goods which fall within the CLRA's protections.

In arguing that the CLRA does not apply to pharmaceutical products, Glenmark compares this case to two precedents finding that "specialized medical products" fall outside of the CLRA's protections. *See Kempt v. Pfizer, Inc.,* 835 F. Supp. 1015, 1025 (E.D. Mich. 1993); *Goldsmith v. Mentor Corp.,* 913 F. Supp. 56, 63 (D.N.H. 1995). *Kempt* involved heart valves while *Goldsmith* involved testicular prostheses. Both were found by the respective courts not to fit under the definition of "consumer products" under the CLRA. The courts reached this conclusion by reasoning that the medical devices at issue were not intended to be covered by the CLRA's drafters because they were highly specialized devices, not

because they were prescription devices. In contrast, a contract for the purchase of birth control pills results in the sale of goods to a consumer, a significantly less specialized endeavor than the attachment and use of a heart valve or prosthesis. The Court concludes that birth control pills are personal consumer products and not specialized medical products. As such, that exception does not apply to this case. Glenmark's motion to dismiss on this ground is **DENIED**.

### *(ii) CLRA's Thirty Day Notice Requirement*

Cal. Civ. Code § 1782 provides that thirty days or more prior to the commencement of an action for damages under the act, the consumer shall notify the person alleged to have committed the violation and demand that the person correct, repair, replace, or otherwise rectify the goods.

Glenmark argues that since Bogart did not comply with the thirty-day notice requirement, her claims under the act should be dismissed. Bogart counters that the thirty-day notice requirement is only applicable to claims for actual damage, whereas the prayer for relief under her CLRA claim requests that Glenmark be enjoined from continuing to engage in the alleged conduct. (Compl. ¶ 40.) The Court agrees with Bogart that the requirement only applies to damage claims and her complaint only requests injunctive relief for this cause of action. *See Myers v. Sprint Spectrum, L.P.* 45 Cal. 4th 634, 644 (2009). In any event, Glenmark did not further address this issue in its reply, thereby conceding to the inapplicability of the thirty-day requirement. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006). The Court denies Glenmark's motion to dismiss on this ground.

### *(iii) Plaintiff's Claim of Unfair and Deceptive Acts under the CLRA*

Bogart claims that Glenmark violated Cal. Civ. Code §§ 1770(a)(4) and (7) by representing that the birth control pills: (a) had characteristics or benefits that they did not have; and (b) were of a particular standard and quality when they were not. (Compl. ¶ 36.) Both of these allegations essentially allege misrepresentation.

///

The Ninth Circuit has held that under California law, CLRA claims of misrepresentation are grounded in fraud even if fraud is not actually alleged. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125-26 (9th Cir. 2009). The Federal Rules of Civil Procedure Rule 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Accordingly, the Court applies the heightened pleading standard of Rule 9(b) and Bogart must plead circumstances of the misrepresentation in terms that are specific enough to give Glenmark the ability to defend against the charges and not just deny wrongdoing. *See Kearns,* 567 F.3d at 1124, 1126. Plaintiff's allegations of fraud must be accompanied by the "who, what, when, where and how" of the misconduct allegations, and must set forth more than the neutral facts necessary to identify the transaction. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

The complaint alleges that the birth control pills were represented as having characteristics or benefits that they did not have and as being of a particular standard when they were not. (Compl. ¶ 36.) But the complaint does not make any allegations as to how the misrepresentations were made, where they appeared, or when they appeared. Bogart's allegations are conclusory and not specific enough to satisfy Rule 9(b)'s heightened pleading standard.

The court **GRANTS** Glenmark's motion to dismiss Bogart's CLRA claim.

### D. Breach of the Implied Warranty of Fitness for a Particular Purpose

California Commercial Code § 2315 creates a cause of action for breach of an implied warranty of fitness for a particular purpose where, at the time of contracting, a seller has reason to know that a buyer seeks goods for a particular purpose and relies on the seller's skill or judgment to select and furnish suitable goods. *See In re Ferrero Litig.*, 794 F.Supp.2d 1107, 1118 (S.D.Cal.2011) (citing *Hauter v. Zogarts*, 14 Cal.3d 104, 120 (1975)).

Glenmark argues that this claim should be dismissed on the ground that Bogart merely stated generic and conclusory allegations of reliance without any supporting facts. Bogart's opposition did not address Glenmark's motion to dismiss this particular claim.

A plaintiff's failure to respond to a party's argument in an opposition to a motion to dismiss amounts to a concession that such claims should in fact be dismissed. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d at 1037 (holding that where the plaintiff's opposition to a motion to dismiss "failed to address any of the arguments presented" in the defendant's motion to dismiss, "the district court had no reason to consider the contention" that the claim in question "could not be dismissed," and the plaintiff "effectively abandoned the claim" before the district court); *Pers. Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009) ("[T]he district court correctly opined that Appellants had waived their 'access to the courts' argument for failing to raise it in their opposition to the Trustee's motion to dismiss.")

In any event, Bogart's arguments on this point consist of conclusory allegations mirroring the required elements of the breach under Cal. Com. Code § 2315. "Threadbare recitals of the elements of an action, supported by mere conclusory statements, do not suffice for stating a claim on which relief can be granted." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Bogart's claim for breach of implied warranty does not satisfy the pleading standard, and for that reason the Court **GRANTS** Glenmark's motion to dismiss the claim of breach of implied warranty of fitness for a particular purpose.

### E. Breach of The Implied Warranty of Merchantability

Under the California Commercial Code, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. *See* Cal. Com. Code § 2314. For goods to be merchantable, they must at least be fit for the ordinary purposes for which such goods are used, be adequately packaged and labeled, and conform to the promises of fact made on the container, if any. *See Birdsong v. Apple, Inc.,* 590 F.3d 955, 958 (9th Cir. 2009) (citing *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1296, (1995)).

In alleging breach, Bogart maintains that she bought the birth control pills from Glenmark; that at the time of sale, Glenmark was a merchant of birth control pills; and that

the pills were not fit for their ordinary contraceptive purposes. (Compl. ¶ 50-52.) She argues that she used and consumed the birth control pills as directed, (Compl. ¶ 15), and that the failure of the birth control pills to act as effective contraceptive was a substantial factor in causing her unintended pregnancy, (Compl. ¶ 53-54).

Glenmark, on the other hand, argues that the very nature of prescription drugs themselves precludes the imposition of a warranty of fitness for ordinary purposes, and asserts that the implied warranty of merchantability does not apply to prescription drugs because they are inherently dangerous. Glenmark cites *Makripodis v. Merrell-Dow Pharmaceuticals, Inc.*, 523 A.2d 374, 377 (Pa. Super. 1987), but that case is not binding on this Court and the Court is not persuaded by its reasoning. Glenmark can't find a California case recognizing an exception to this warranty for inherently dangerous drugs, and this Court won't create an exception. Bogart's allegations make it is plausible that an implied warranty of merchantability existed and was breached.

The motion to dismiss Bogart's warranty of merchantability claim is **DENIED.**

F.   **Breach of Express Warranty**

California's Commercial Code provides a cause of action where a seller makes an express affirmation of fact or promise relating to goods, the buyer relies on it as a basis for her decision to purchase those goods, and the goods do not conform. *See Keith v. Buchanan*, 173 Cal. App. 3d 13, 19 (1985) (citing Cal. Com. Code § 2313).

Bogart claims that Glenmark represented that the birth control pills protected her from unwanted pregnancies. (Compl. ¶ 56.) But a representation is not the same as an express promise, which is what is required here. Bogart doesn't elaborate on any facts concerning Glenmark's supposed representation or its effect on her, much less how it may have been breached. The federal pleading standard requires her complaint to allege further factual details to allow the Court to determine whether she raises a right to relief for breach of that warranty above the speculative level. *See Twombly*, 550 U.S. at 555. The Court **GRANTS** Bogart's motion to dismiss Bogart's claim for breach of express warranty.

///

### IV. Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a pleading should be freely granted. The Court will therefore give Bogart a fair opportunity to amend her complaint to correct the identified deficiencies.

### V. Conclusion

Bogart's claims for breach of implied warranty of fitness for a particular purpose, violation of the CLRA, and breach of express warranty are **DISMISSED WITH LEAVE TO AMEND.** Glenmark's motion to dismiss the claims for strict products liability, negligence, and breach of warranty of merchantability are **DENIED**. Any amended complaint must be filed within **TWO WEEKS OF THE DATE OF THIS ORDER.**

**IT IS SO ORDERED**.

DATED: November 5, 2014

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge